**CHIESA, Plaintiff-Appellee, v. THOMAS, Jr. et, Defendants-Appellants.**

Ohio Appeals, Fifth District, Stark County.

No. 2695. Decided March 20, 1956.

Herschel Kriger, Jerry P. Hontas, for plaintiff-appellee.
Day, Cope, Ketterer, Raley & Wright, for defendants-appellants.

## OPINION

By McCLINTOCK, J.

We will refer to the parties to this appeal as they were designated in the Court below, to-wit: Juanita F. Chiesa, plaintiff, and Harry A. Thomas, Jr. and Marcos G. Chimples, defendants. This cause involves two appeals, one by plaintiff, and one by defendants.

The third amended petition of plaintiff says that at all times hereinafter set forth, 305-7-9 Market Avenue South in the City of Canton, Ohio was and is a two-story combined commercial and residential structure with commercial businesses on the first floor thereof and offices and residential apartments on the second floor thereof and with access to and egress from the second floor by means of a stairway connected with a common passageway at the top thereof, which passageway and stairway were used in common by the occupants of the offices and apartments in said building and others having business therewith,

and that the defendants were and are the lessees in possession of the entirety of said building pursuant to a written lease therefor between Mark Hambleton, the owner thereof, as lessor, and the defendants, as lessees, and that said defendants were in possession and control of said stairway and said second floor passageway, and that the defendants herein knew of the existence of certain defective and dangerous conditions situated in said premises, and that at the top of the stairway, on the second floor of said premises, there was a linoleum floor covering and that a defective and dangerous condition existed therein in that the same has become worn and torn and that the defective and dangerous condition thereof was not readily apparent to persons using said stairway and the passageway at the top thereof leading to the said offices and apartments, and by reason of the dim lighting provided therefor, and that it was necessary to traverse over said linoleum in that said stairway and said passageway were the usual and principal means of access to and egress from the said offices and apartments; that said linoleum, in the condition aforesaid, and said defective and dangerous condition had existed for a considerable period of time prior to the accident complained of.

Plaintiff says that on or about January 27, 1951, at or about 3:00 o'clock A. M., she was visiting one of the tenants of the defendants on the second floor of said building, that she left their apartment for the purpose of purchasing gingerale for said tenants and their guests and as she approached said stairway her foot was caught in a torn and defective spot in said linoleum and she did trip over the same, which torn and defective spot was not readily apparent at said time and place, and she was precipitated violently forward and down the said stairway to the street below, suffering the injuries hereinafter set forth; that she was unable to right herself and prevent said fall because of the defective condition of said stairway and the banisters, as aforesaid; that she at all times was in the exercise of ordinary care for her own safety and that the injuries she sustained were solely, proximately and directly caused by the negligence and carelessness of the defendants, in the following particulars, to-wit:

1. In allowing said defective and dangerous conditions to exist in said linoleum floor covering and said stairway after they knew of same;

2. In failing to inspect said linoleum and said stairway to the end and purpose that they would have discovered the defective and dangerous condition thereof;

3. In failing to repair or replace said linoleum and to repair and replace said stairway;

4. In failing to warn plaintiff and others using said stairway and said passageway of the dangerous and defective condition thereof;

5. In failing to furnish adequate lighting for said stairway and passageway;

6. In allowing said dangerous and defective condition, relative to the loose and broken bannisters to exist after they knew of same.

Plaintiff further says that as she fell to the pavement at the foot of said stairway she suffered a violent blow upon the head and was rendered

unconscious thereby, and did suffer a concussion of her brain, that she was taken to Mercy Hospital where she did undergo medical and surgical examination and treatment, that she was unconscious for a period of three days and semi-conscious for a period of a week, that she was required to and did undergo a surgical operation for the relief of pain in her head as the result of said fall, which operation did consist of the surgeon cutting out a section of her skull and removing from her brain a blood clot which had been causing pressure thereon, that she did remain in said hospital bed-fast for a period of three weeks and was unable to return to her job for another five weeks, being generally confined to her home; that said operation necessitated the shaving of her head, which did subject her to shame and ridicule until the hair grew back in and which did necessitate her wearing a covering over her head at all times.

Plaintiff says that she also did further suffer bruises, contusions and injuries to her head, face, arms, legs, and body, and a general shock to her nervous system in said fall, that prior to said accident she was in good health and was regularly employed at the Bloomfield Company earning approximately $42.00 per week, that as result of said accident and her said injuries she did lose eight weeks of work initially and approximately an additional week thereafter by reason of recurrence of her headaches, thus losing wages of approximately $375.00, that her clothing was torn and the diminution in the value thereof by reason of same was $50.00, that she was required to and did expend and obligate herself for medical, surgical, and hospital services and for drugs the sum of approximately $1,150.00; that since said accident she has suffered from headaches and dizziness, loss of appetite, difficulty in sleeping, pain in her ears and general weakness, that she has lost approximately 25 pounds in weight, that she believes and therefore avers that she will be required to undergo additional medical and surgical treatment in the future, that she has suffered a permanent impairment of her earning capacity, that her life expectancy has been shortened and that her injuries, as aforesaid, are permanent and incurable.

Wherefore, plaintiff prays for judgment against the defendants in the sum of $51,575.00, for her costs herein and for such other relief to which she may be entitled.

To this petition the defendants filed an answer and admitted that 305-7-9 Market Avenue South, in the City of Canton, Ohio, was and is a two-story combined commercial and residential structure with residential apartments on the second floor and with access to and egress from the second floor by means of a stairway connected with a passageway at the top thereof, which passageway and stairway were and are used in common by the occupants of said apartments and by those having business with the occupants of said apartments. Defendants admit that they are the lessees of said building and aver the fact to be that the apartments on the second floor of said building are rented to subtenants.

Defendants deny that said stairway and passageway were in a defective and dangerous condition as alleged in the third amended petition, and aver the fact to be that the condition of said stairway and

passageway was well known to the plaintiff at and prior to the time of said accident.

Defendants admit that the plaintiff received some injuries on or about January 27, 1951, but deny that such injuries as she in fact sustained were caused by the negligence and carelessness of the defendants in any of the particulars alleged in the third amended petition or in any particulars whatsoever and aver the fact to be that such injuries were caused directly and proximately by the carelessness, heedlessness and negligence of the plaintiff in her conduct prior to and at the time of said accident.

Defendants deny generally each and every allegation in said third amended petition contained, except such as are herein specifically admitted to be true. Wherefore, having fully answered, defendants pray that the plaintiff's third amended petition be dismissed and that they may go hence without day, with their costs.

For her reply to the answer plaintiff says that she denies, generally and specially, each and every allegation thereof, except such as admit the averments of her petition.

The cause came on for hearing before a Court and Jury and the Jury rendered a verdict in favor of the plaintiff for the sum of $18,380.00. A motion for new trial was filed by defendants, which reads as follows:

"Now come the defendants and move the court to vacate and set aside the verdict of the jury and the judgment herein and for a new trial for the following causes which materially affect the substantial rights of these defendants, to-wit:

1. For irregularities in the proceedings of the jury and matters occurring during the trial by which the defendants were prevented from having a fair trial in this, to-wit:

(a) Improper communications with the jury by Mrs. Hontas, wife of one of counsel for the plaintiff;

(b) Irregularity in furnishing to the jury an exhibit which was refused admission in evidence and which made specific reference to insurance coverages required of the defendants;

(c) Irregularity by the jury in referring to definitions in the dictionary in the Judge's office pertaining to the case and the Court's charge during a period of recess during the jury's deliberations.

2. The verdict is not sustained by sufficient evidence and is contrary to the manifest weight thereof;

3. The verdict is contrary to law;

4. For error in refusing to give to the jury before argument certain special requests submitted by the defendants;

5. For error in giving to the jury before argument certain special requests submitted by the plaintiff;

6. For error in refusing to charge the jury as requested by the defendants at the conclusion of the Court's general charge;

7. For errors in the Court's general charge prejudicial to the defendants;

8. For errors in instructing the jury in response to a question pro-

pounded by them and in overruling motions made by the defendants at that stage of the proceedings;

9. For error in improperly admitting evidence offered by the plaintiff and objected to by the defendants;

10. For error in excluding evidence offered by the defendants;

11. The verdict was the result of sympathy, passion, and prejudice;

12. For error in overruling the defendants' motions made at the conclusion of the plaintiff's case for a directed verdict and for orders striking the several specifications of negligence from the third amended petition;

13. For error in overruling the defendants' motions made at the conclusion of all of the evidence.

14. For the several errors of law occurring at the trial and to which exceptions were taken by the defendants at the time, and for other rules manifest from the face of the record."

Said motion for new trial was sustained and the defendants also filed a motion for a judgment notwithstanding the verdict, which was overruled by the Court below.

Thereafter, plaintiff appealed to this Court from said order of the Court granting a new trial. Plaintiff claims that the appeal should be dismissed for the reason that no proper assignments of error have been filed. At the oral hearing this Court considered that feature of the case and overruled the same. We think there is no merit whatsoever to this claim.

The assignments of error of plaintiff in her appeal to this court are as follows:

"1. The trial court erred to the prejudice of this appellant in accepting and in considering evidence as to events occurring within the jury room during deliberations of the jury in the absence of evidence aliunde;

"2. The trial court erred to the prejudice of this appellant in sustaining the motion for a new trial and in nullifying the verdict heretofore granted by the jury;

"3. The trial court erred to the prejudice of this appellant in abusing its discretion with reference to the foregoing matters."

It is the opinion of this Court that none of these assignments of error are well taken, for the reason that a communication to the jury in the form of an exhibit had been refused admission into evidence, in which communication the word "insurance" was used, which exhibit inadvertently was before the jury in their deliberations. This was clearly prejudicial error and for that reason the appeal of said plaintiff is not well taken.

Defendants appealed from the order of the Court overruling defendants' motion for judgment notwithstanding the verdict, and claim that they are entitled to judgment in their favor for the reasons that:

"1. Upon the statements in the pleadings and upon evidence received upon the trial the defendants are entitled by law to judgment in their favor;

2. The trial Court erred in overruling the motions of the defendants for a directed verdict in their favor, which motions were made during the trial of the cause;

(a) At the close of the plaintiff's case;

(b) At the close of all of the evidence in the case, all parties having rested;

3. An inference and presumption that negligence upon the part of the plaintiff directly and proximately caused and contributed to cause the injuries of which she complains appears from the plaintiff's own testimony and the uncontradicted evidence submitted at the time of the trial, which inference and presumption were not rebutted, placed in equipoise, or counter-balanced by any evidence."

It is questionable if defendants' motion for judgment notwithstanding the verdict is an appealable order, for the reason that there was no motion for a new trial definitely directed to it. We cite: **Jolley v. Martin Brothers Box Co., 158 Oh St 416, at page 423:**

"Although its determination does not affect the end result in the instant case, a serious question arises as to whether an order overruling a motion for judgment notwithstanding a verdict is, in itself, a final appealable order, where there is no motion for new trial directed to such order and an overruling of such motion. This problem arises because of changes which in recent years have been made in the Appellate Procedure Act of this state.

"By **Section 6, Article IV, Ohio Constitution,** effective January 1, 1945, only judgments and final orders may be appealed from to the Court of Appeals. **Sec. 12223-2 GC,** effective September 30, 1947, defines a final appealable order as one which affects a substantial right in an action when in effect it determines the action and prevents a judgment. Clearly, the sustaining of a motion for judgment non obstante is a final order because it determines the action with a judgment. But the overruling of such a motion does not determine the action or prevent a judgment upon a verdict, which judgment will become final unless a motion for new trial directed to it is filed. If, however, a motion for new trial is filed directed to an order overruling a motion for judgment non obstante, which new trial under §11575 GC, requires a trial court to re-examine the issues of law as well as fact, an adverse ruling on such motion for a new trial makes the order overruling a motion for judgment non obstante a final appealable order. It would, therefore, be better practice, if not in fact necessary, that a motion for new trial be lodged to an order overruling a motion for judgment non obstante and be overruled before such order becomes an appealable one."

However, we will not decide this case on that question. As to the appeal of defendants from a judgment notwithstanding the verdict, the law on that subject is as follows, citing **Jolley v. Martin Brothers Box Co., 158 Oh St 428:**

"In an appeal from an order overruling a motion for judgment notwithstanding the verdict, the question presented is whether the appellant was entitled to judgment as a matter of law. In such appeal the reviewing court cannot weigh the evidence; neither can it pass upon such matters as misconduct of counsel or misconduct of the jury and similar matters which may properly be raised on motion for new trial."

We also cite **Blanc v. Farm Bureau Mutual Automobile Insurance Company,** as found in the Ohio Bar of March 5, 1956, Page 37 (**72 Abs 37**):

"1. If, on either a motion for a directed verdict or a motion for a judgment notwithstanding the verdict, made by defendant, the defendant was entitled to a judgment as a matter of law, when giving the whole evidence its most favorable interpretation in support of plaintiff's case, and such motion was overruled, then error prejudicial to the right of defendant has intervened and defendant is entitled to final judgment.

"2. In considering either a motion for a directed verdict or a motion for a judgment notwithstanding the verdict, the court has no right to weigh the evidence."

From this record of almost 400 pages we find some of the facts to be as follows:

The accident which is the subject of this lawsuit occurred during the early morning of January 28, 1951. On the evening before, the plaintiff, Juanita F. Chiesa, then age 24, stopped with her uncle and brother at the defendants' tavern, where she had a few drinks and danced to the juke-box. She arrived about 10 A. M. and had one drink at the bar with and spoke for about a half hour with Olive Waterman, an old friend and one of the defendants' tenants in the upstairs apartment. She left Miss Waterman with the advice that she "would see her later" and joined her uncle and brother in one of the booths.

When her uncle and brother left the tavern about midnight, plaintiff went over to the Italian Club, a social club for persons of Italian ancestry, about a block away, where she drank a bottle of beer and danced to the juke-box. About 3:30 A. M. she left the Italian Club in company with an acquaintance for the purpose of visiting her friend, Olive Waterman, at her apartment. Before ascending the stairs she stopped at the defendants' tavern and procured a bottle of whiskey from Zack Thomas, the bartender and brother of the defendant Thomas. Then she ascended the stairs and went to the rear of the building where she knocked on the Waterman door. Miss Waterman's friend, Buck Knoll, who apparently lived there with her, opened and answered the door after Miss Waterman had answered the knock with "I'll be with you in a moment" and let the two in. The two men immediately poured themselves drinks from the bottle, but plaintiff asked Miss Waterman, who was still in the bedroom, whether she had any gingerale. It appearing that she had none, plaintiff advised that she would go downstairs and procure some gingerale. She left her coat and handbag in the apartment, walked down the hallway, but as she approached the stairway her foot caught in the linoleum or in a hole or worn spot therein and she was precipitated to the bottom, striking her head and suffering very serious injuries.

The plaintiff and Olive Waterman were old friends of many years. Plaintiff had visited her in her apartment on other occasions.

Plaintiff and Olive Waterman spoke in friendly fashion for a half hour in the tavern prior to the accident and plaintiff left her with the advice that she would see her later that evening, surely an indication that ʰⁿ would call at her apartment later.

Wʌen plaintiff knocked, Olive apparently recognized her voice and indicated that she could come in. She and her friend were admitted

readily by Miss Waterman's male friend, who proceeded to pour him and the other man a drink from the bottle.

Plaintiff had a brief conversation with Miss Waterman before leaving. Plaintiff left the apartment only for the purpose of procuring gingerale for herself and Miss Waterman and obviously intended to return, for she left her coat and handbag in the apartment. The intended trip to the tavern below was for the mutual benefit of all of them—to procure gingerale for the party in which all were to participate.

On the question of whether the plaintiff was a guest of a tenant and accordingly an invitee, we cite **Davies v. Kelley, 112 Oh St 122,** which holds in **Syllabus 2:**

"Where a porch and a stairway leading thereto are provided, maintained and controlled by a landlord for the use of several tenants of his building, and are thus used, he is, in general, liable for any injuries arising from his neglect to keep the same in proper repair; such duty and liability extend not only to the tenant himself, but also to members of his family, employees, **guests and invitees.**"

In conclusion, we are of the opinion there was some evidence in the record that the plaintiff was a guest of a tenant and accordingly an invitee, and for the reasons herein stated, it is our opinion that the Court acted correctly in overruling the motion for judgment notwithstanding the verdict, and that none of the assignments of error on behalf of plaintiff nor of defendants are well taken, and the judgment of the Court of Common Pleas is hereby affirmed.

MONTGOMERY, PJ, concurs.
PUTNAM, J, concurs in judgment.